Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Petitioner, David Hartley. I'll reserve a few minutes of my time for rebuttal. Mr. Hartley was sentenced to 25 years to life after being convicted in California state courts of petty theft with a prior. He, after exhausting his state court remedies, he filed a federal habeas petition. The district court denied his request for appointment of counsel, denied his request for evidentiary tolling, made his petition timely. And instead, the district court found that his federal habeas petition had been filed five days late. Mr. Hartley claims that he's entitled to 137 days of equitable tolling, which would render his petition timely. First, he claims that he's entitled to 62 days of equitable tolling because his court-appointed counsel failed to provide him with his legal materials and failed to notify him that his state court petition had been denied relief to Mr. Hartley and failed to notify him within a period of time in which Mr. Hartley himself could have sought relief from the California Supreme Court. By doing so, the court-appointed counsel precluded Mr. Hartley from pursuing his remedies in California state court and also deprived him of several months of time within which he could have been pursuing his federal habeas relief. How many months did he have to file his federal petition? The California state court denial came down on March 3, 2004. Now, the state court-appointed counsel didn't send Mr. Hartley a letter with all the materials until June. That letter indicated that there had been a previous communication. And in my opening brief, I indicated that although it's not a matter of record, Mr. Hartley did provide me with the materials. And I also indicated with a log of legal mail indicating that the previous communication was May 24, 2004. But he got his materials June 23. That's when he got the complete materials. And how long did he have from then to file his federal habeas petition? He then had to exhaust his California habeas remedies. And he filed his California habeas petition in, I think, on June 23, 2004. I see. April 20... April 2005. I'm not sure of the exact date. He filed one on April 1st, another one on April 21st. That's right, Your Honor. And he was denied by the California Supreme Court on February 22, 2006. And he then filed his federal habeas petition within a month thereafter on March 21, 2006. And that was five days late, huh? That was five days late. Because he was entitled to tolling during the period of time from the statute of limitations began to run on April 22, 2004. That was after the California denial became final. It then became tolled because Mr. Hartley had a California state court, a state post-conviction proceeding pending. When the California state post-conviction proceeding was denied, that's when the statute of limitations began to run again. And that was in April of 2005? That was in April 2005. And so how long did he have then after April 2005 to file his federal... Oh, no, I'm sorry, Your Honor. On April 2005, that's when the statute of limitations stopped running. It became tolled because he had filed his state post-conviction proceeding. The statute of limitations then began to run again in February 23, 2006. And he filed his federal habeas corpus petition in March 21, 2006, less than a month after the statute of limitations began to run again. After it had been statutorily tolled by operation of the California pending state post-conviction proceedings. Well, I guess one way to look at it is if you wait until all of the California proceedings have been terminated, he then filed his habeas, federal habeas within a little over a month after that? That's correct, Your Honor. And he would have a year typically to file? Well, what happened was because the district court found that there was not gap tolling, he had an initial state habeas. He had two, basically, two proceedings done in the lower courts. It went up on appeal, and then it went back on another issue. After he went back on the first issue, he filed a post-conviction in the state courts with respect to the first proceeding. That petition was pending when the state court denied his second appeal. And so the pendency of that initial state post-conviction proceeding tolled the statute for a certain period of time. The district court found there was not gap tolling between the first state post-conviction and the second state post-conviction, because they related to different proceedings. There was a first proceeding in the superior court and a second proceeding in the superior court. But the longest period of time we're talking about is the period between the denial of the California state court appeal and the filing of the second post-conviction proceeding in California state courts. That's when the most period of time elapsed. And once he filed his second post-conviction proceeding in California state courts and that was denied, he then filed his federal post-conviction within a month thereafter. But the period of time that we're talking about that was equitably tolled was the period between the denial of his appeal and the beginning of state post-conviction proceedings. And that's when the prison was on lockdown for several months and that's when his state court appointed counsel didn't provide him with his legal materials, which also lost him the opportunity to seek further relief of the direct appeal in California state courts. So what case supports your position? What's the strongest case that you'd incite to us that supports your position? Well, there are a number of different issues. With respect to tolling, we argue that there should be stop-clock tolling. And on that, the Socop-Gonzalez and the Lott cases support the argument that there should be stop-clock tolling. You shouldn't have to determine whether or not there was a delay. You just stop the clock during the period of time that there was an extraordinary circumstance. Now, with respect to the fact that the law library access was denied, there are several cases in this court that hold that denial of law library access can provide grounds for equitable tolling. There's... I'm sorry, I can't remember that case specifically. There were a number of cases in which the courts found that law library access in the Roy case, in the Whelan case, the courts found that denial of access to law libraries. There was another case which is in the briefs and I can't remember offhand what it was, but the case where there was a Spanish-speaking inmate who didn't have access to Spanish-speaking materials and therefore the law library access was not effective. And that also was a ground for equitable tolling. And there's a number of grounds saying when a petitioner has been denied access to his legal materials, there's also grounds for equitable tolling that are cited in the briefs. In this case, not only was he denied access to his legal materials, but by the court-appointed counsel's failure to notify him that his state court appeal had been denied, he lost the opportunity to suffer to the Supreme Court and to seek a petition for certiorari in the United States Supreme Court, which would have given him obviously far more time and therefore there would have been no reason to seek equitable tolling because he would have had statutory right. Equitable tolling is established in California. Yes. In this circuit. Yes, it's well established in this circuit and in other circuits. Well, I think Your Honor, unless there are no further questions, I'll reserve the remainder of my time for rebuttal. All right. Good morning. Douglas Vance, Deputy Attorney General, on behalf of Respondent. First of all, I'd like to correct one thing. Counsel indicated that Mr. Hartley was sentenced to 25 years to life for petty theft with a prior. He was not sentenced on that basis. He was sentenced under California's three strikes law, which reflected his recidivism. Yeah, I understand. Obviously, there are two fundamental questions here. His last strike was what again? I don't recall what his last strike was, but his last conviction, which became a prior by operation of a prior theft. You don't know what his last strike was? I don't recall. There are two fundamental questions here. He was convicted of petty theft. That was his last strike. No, that's not a strike. He was convicted of petty theft with a prior under Section 666 and 484A. Correct, but that's not a strike. He was sentenced because he had acquired another felony conviction following two prior strike convictions, which is what California law provides for under the three strike law. So it became a felony by operation of a prior theft-related conviction, but it is not a strike in and of itself because it's neither a serious nor violent felony. But that brought on the three strike rule. Correct. Well, that's what I'm saying. So he committed a petty theft, and now he ends up with 25 years to life plus things that were in his background. He committed a petty theft following a long history of recidivism, which is what the California three strikes law incorporates, and that's the fundamental basis for it, as decided by the Supreme Court. We haven't seen any three strikes cases for a long time. At least I haven't. Most of them have been denied, but the district court level and certificates of appealability have not been granted based on Lockyer v. Andrade and Ewing v. California. Well, I don't know that that's true. I think that prosecutors have stopped pressing for... We have a misdemeanor, and technically the three strikes law would come into effect. They just walk away from it. There's nothing that I've seen in either... There does appear to be an exception to the rule, but throughout the rest of the state, the possible exception is the city of San Francisco. I've seen nothing in the newspapers or statistical that indicates that the district attorneys around the state are not filing three strikes cases when they determine that it is appropriate. And occasionally that includes... I have some cases pending in this court, I believe, at the moment regarding petty thefts for the prior as being the third conviction. And the reason those cases are here is to try to preserve the first issue that we've raised in the brief, which is that equitable tolling isn't permitted under... I had one where a fellow went in and he stole a six-pack of beer and then went around the back of the supermarket and was drinking a can of cold beer. And he was arrested by the guards, the security people in the supermarket. And he got 25 years to life, but the worst part of it was that they never even let him finish his beer. Well, perhaps he got some wine once he got into prison, some prison-brewed wine. What? Some prison-brewed wine. You know a lot about what goes on in the prisons, more than I do. Go ahead. I work with him more frequently, perhaps. In any event, the issue that I understand before the court is not the propriety of California three strikes law. There are two fundamental questions as I see it. The first one is whether either of the circumstances asserted by Mr. Hartley can provide the basis for equitable tolling. And the second issue is that... You don't have much time. Let's assume they could. Is he then on time or is he still five days late? He's still five days late. Why is that? Well, first of all, the primary reason is because he dawdled and failed to be diligent between the time that the statute began running. And when did it start to run? June 23, 2004? June 22, I think it was. Okay, and you say he was then not diligent. He waited ten months until April of 2005 before he filed his first collateral attack, which was a state petition. Okay, but what that implies is that he should have been working on his federal petition instead of his state. But if he were working on his state petition, I guess that time doesn't get excluded until he files the state petition. And then you start excluding time again, is that right? That's correct. So that first ten-month period would run against him anyway, you're saying? Correct. Absent tolling. When did the other two months run against him? Because then he'd have two months, right? Now I've got to go back and double-check the procedural history of the case. April 21st is when the California Supreme Court denied his first habeas petition. Now the time starts to run again? It began to run in April of 2004. April of 2004. But he didn't get his materials until June. That's not correct, he did get materials. Well, his lawyer said, I sent them to you. Well, there would be no reason for that lawyer to have included the language he did in his letter, which said, I'm sorry that I sent you the opinion until May 26th. Let's suppose he didn't get them until June. Let's suppose that's the case. Then ten months goes by and he files his first state habeas petition. So his year is now shortened down to two. He's got two months left to file a federal petition, is that right? Assuming that his state habeas petition was properly filed and therefore could toll the statute, it would give him a couple of months, yes. Now, did that run against him as well? The time that the petition was pending in state court? Yeah, no, that would not run against him, correct? Assuming the petition was properly filed. Okay, so that doesn't run against him. So when does the statute start running against him again? As soon as the California Supreme Court denies that petition. And that was? That was in February of 2006. When? February of 2006. Okay, so then did more than two months go by before he filed his federal petition? No, he filed his federal petition on March 21st. Well, why was there a time like that? Because he didn't have two months at that time. Under your hypothetical, he did. But the fact remains is that his judgment became final in April of 2004, and he used up almost the entire 12 months before he began to toll by filing a state petition. So the only way that that works, your hypothetical works, is if you find that he was entitled to tolling for that first period between when the judgment became final and the June of 2004 date. Okay. And, of course, our fundamental position is that the statute of limitations, by providing a one-year period before you need to file, incorporates the kind of things that Mr. Hartley faced here. The first thing he faced was that he didn't have one page of the state court opinion and a letter from counsel notifying that his appeal had been denied. But he had everything else. There's nothing else in the record that suggests he ñ throughout the pleadings in this case, that has been referred to as being denied, his legal materials. But there's nothing in the record that suggests he was denied anything other than one page of the state court opinion, which was inadvertently omitted. Page six. Page six. I mean, the first question might be for the court is how many ñ I don't think it's necessarily before the court, but a legitimate question might be how many days is enough, you know, or is too much for a state appellate counsel to notify his client that an opinion has been rendered that has denied his appeal. In this case, we calculate it different. Each side calculates it different. But at the very worst, I believe it was around 60 days. Yeah, in the May mailing. So he's supposed to know all this, huh? No, we're not expecting him to know. We're struggling with figuring out those time periods. No, we're not expecting him to know that at all. But the circuits, including this circuit, have been consistent that lack of legal expertise is not right. We're dealing with a constitutional right, aren't we? Yes. Habeas, right? Used to be called the great writ. Correct. Now it's probably the great joke. I wouldn't agree with that. We're doing everything we can to deny these people their constitutional rights. All in the name of efficiency and all in the name of having more appeals up here. But anyway, what about this Lott v. Mueller case? Isn't that in his favor? We held this was an ADEPA case. The prisoner was entitled to equitable tolling when he was deprived of his legal files for 82 days, and his petition was only seven days late. But there is nothing in this record that indicates he was denied his legal materials. That was an entirely different factual scenario. Wasn't there a lockdown in the prison? Later on, there was a lockdown in the prison, but that didn't deny him his legal materials, nor has there ever been an assertion that it did. Well, he can't get into the law library, can he? Isn't the law library open all the time? I don't know the hours that the law library is open. As far as I know, there's been no suggestion that it isn't. I don't know. I'm just asking you. You should be on top of this. There are some states where the law library is almost non-existent, but the state provides a paralegal to help on this. But California is not so... But here we have a case seven days late. This case here, the Lott v. Mueller, seven days late. In just trying to address your specific question, there is nothing in this record that suggests he was denied his legal materials. Yes, there were lockdowns later on. Courts have held routinely that those are part of ordinary prison life. And in this case, the very material that Petitioner Hartley has submitted in the district court, and that are now part of the record, demonstrate that he was not denied... What if he had a lockdown that ran for a year? Well, theoretically, depending on the circumstances of it, the U.S. Supreme Court has said he has no constitutional rights. He only has constitutional right to physical access. He only has constitutional right to access to the materials. And under the normal operations of a prison, when a lockdown occurs, the prisons provide an alternative method by which petitioners can obtain legal materials in order to prepare their pleadings. In this case, according to the very material that Petitioner has submitted, the process that was established at this prison was that he submitted requests for cases and case books and legal material to a runner, apparently, who took it to the library. The librarian pulled the material and sent it to the prisoner. That provided him access. The question has never been, as far as I can tell, in any circuit, nor in the Supreme Court, whether things were more difficult for him. Prison life is difficult. It does present unusual circumstances that people who are not in prison don't have to face. But that's why the Congress incorporated, or at least one of the reasons Congress incorporated a one-year statute of limitations, to try to take that into consideration. So, yes, I understand it could have been more difficult for him than another prisoner who was not under lockdown to get materials that he wanted. But we also can't ignore the fact that within what would have been a timely filing, he filed state petitions. So it wasn't that he was able to file timely petitions. He just never filed a protective petition, nor did he file within the limited time he had left once California's Supreme Court denied his latest petition before he filed a federal petition. It was a month and a half. That sounds like a little bit of time. But it's his own fault. He exhausted almost his entire statute of limitations period before he got to that point. Now, the federal petition that he files, he must show that he filed those same federal claims in the state petition. Is that right? Correct, in order to exhaust. So in preparing the federal petition, he didn't have any, let's say, further investigation or research or anything. He'd already done that when he filed his state petition, I guess, or should have. The first state petition included all but one of the issues raised in the federal petition. The second state petition included the one missing one, which was his Eighth Amendment claim. And when was the second filed? I'm sorry to bother you with all these dates. You're not bothering me here, are you? Actually, it turned out to be the third, because I'd forgotten the one that he filed on addressing his first conviction, which was ultimately reversed. But the second one was filed on April 21st of 2005. Correct. And that was denied. No, that was the denial date, February 22nd of 2006. The filing date was April 21st of 2005. Yeah, but it was denied February 22nd, 2006. Correct. By the California Supreme Court. All right? And then he got his in. And then the one year expired on March the 16th, and he got it in on March the 21st, five days late. Well, yes, but the courts have held that even one day late is too much.  Yeah, that's why we have tolling, too, and other equitable rules. But, you know, we're spending a lot of time on this. Do you want anything more from me? No, I probably should, but I can't think of anything else to ask you. Thank you. All right. Okay, here you are. Thank you, Your Honor. Very briefly, there are just a few points I wanted to respond to. Mr. Danzig asked, for example, how many days is too much for a court-appointed counsel to notify his client that his appeal has been denied? Now, the California Appellate Project advises their court-appointed counsel that they supervise to notify their clients within three days if their appeal has been denied. And if they're not going to petition for review in the California Supreme Court, the counsel are told, let your client know you're not going to be petitioning for review, tell them the deadlines for filing a petition for review, provide them with a sample of a petition for review so the client knows how to protect his own rights. In this case, court-appointed counsel waited 60 days or 90 days, depending upon how you read the record, after the time for seeking review in the California Supreme Court had passed. And in doing so, he not only violated his obligations as a court-appointed counsel, but also violated his obligations as a lawyer not to withdraw from representing a client in a manner that would prejudice his client, because in doing so. But your opposition says the only thing that he didn't have right away, I guess, was page 6 from the Supreme Court opinion? From the Court of Appeal opinion. Court of Appeal's opinion. And the result, I guess, maybe. I mean, he had all the other papers, didn't he? Well, there are two separate issues. He was arguing that in terms of what he had not received from his counsel until several months after the denial, he didn't receive the opinion until at least two months after the denial thereof. He also didn't receive the reply from the Attorney General. But the point I'm making is that not only did he not have the materials, he also lost the opportunity to petition himself for review. And that would have given him months more time. So his petition clearly, we know that he's someone who aggressively pursues his rights. If the lawyer didn't resign, he couldn't file his own petition? The lawyer didn't even tell him that it had been denied. So he didn't know that he had anything that needed to be reviewed in the California Supreme Court. The time for seeking review expired in April. Court-appointed counsel didn't let him know until May or June, depending upon how you read the record, that it had even been denied, long after the time for petitioning for review in the California Supreme Court had passed. But one more point I wanted to make is that with respect to the Attorney General's arguing that my client was not diligent, and it's clear in this Court that if the petitioner shows extraordinary circumstances, since he's proceeding pro se, his pleadings are to be liberally construed. He's not required to set forth the dates on which he went to the law library, although he can do so in an evidentiary hearing. But in terms of pleading, in the Roy case, it says he's not required to set forth every date. As long as he alleges diligence, it's then up to the facts to be developed in an evidentiary hearing, not for him to be denied without counsel or without an evidentiary hearing. Because he's pro se, his pleadings are to be liberally construed, and he needs to be given the benefit of the doubt, and the facts are to be fleshed out in an evidentiary hearing. The Attorney General also argued that lockdowns are a part of ordinary prison life. Oh, I guess I'm misreading the clock. I guess my time is over. I thought I still had a minute and 30 seconds, but I guess I won't hold it. I'll give you a little tolling. Go ahead. Okay. Thank you, Your Honor. And that was what the district court relied upon, that lockdowns are not an unconstitutional impediment. But as we pointed out in our opening brief, the district court was completely misinterpreting the case, the Aiken case and the Corrigan case, upon which it relied. That was dealing with unconstitutional impediment, not equitable tolling. Lockdowns can be subject to equitable tolling if they do something such as here, where they denied Mr. Hartley his right to effective law library access. And the Attorney General was also saying he had access to secondary materials, but he didn't. What he had to do was give the law librarian a list of three cases he wanted, the cases would be copied and brought to him, and then he'd have to figure out the next three cases he wanted. He didn't have secondary source materials. He only had to proceed from one case to another, trying to put together some claim, which is extremely difficult, not only time-consuming, but difficult because he didn't have law library access. And the cases we cited in our brief established that that is a ground for equitable tolling. And he's working and he's doing his legal work in a cell, huh? That's correct, Your Honor. You know, I overlooked mentioning something else. This is not on your time, but Judge Dorothy Nelson is not with us this morning. Her husband is undergoing surgery probably as we speak, and she asked me to tell you all that she's read all the briefs and that she's thoroughly cognizant of all the issues in these cases, and that at the first opportunity she will watch the tapes. We do photograph everything in this room, so you want to, when you sit back there,  and she'll, everything's recorded here, and she'll go through all of that, and then we'll get together and decide how the case ought to be disposed of. So I overlooked, though I had notes in my mind at the time to bring that information to the floor, I overlooked that. Well, thank you, Your Honor. I'm sorry to hear about Judge Nelson's husband. I hope for the best for him. So if there are no other questions, thank you very much. Okay, thank you. All right, now we come to Movissian v. Victoria. Thank you.
judges: Pregerson, Nelson, Thompson